IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

EDDIE L. GIBSON                                                                                    PLAINTIFF

V.                                         CASE NO. 08-CV-1039

ALCOA, INC., SAPA EXTRUSIONS, INC.,
A/K/A SAPA FABRICATED PRODUCTS,
AND METLIFE GROUP, INC.                                                                DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Eddie Gibson commenced this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*., to recover life insurance and accidental death and dismemberment benefits allegedly due to him under a Metropolitan Life Insurance Company plan sponsored by his employer Alcoa, Inc. The administrative record has been filed, and both parties have submitted briefs. (Doc. 30 and Doc. 32). The Court finds this matter ripe for consideration.

### BACKGROUND

Plaintiff brings this case before the Court to seek review of Defendant Metropolitan Life Insurance Company's ("MetLife") denial of Plaintiff's claims for accidental death insurance and life insurance benefits stemming from the death of Plaintiff's daughter. Plaintiff was employed by Defendant Alcoa, Inc. and/or Sapa Extrusions, Inc. at all times relevant to this cause of action and was a participant in the Alcoa Group Life Insurance Plan (the "Plan"). These plan benefits were administered by MetLife. Under the Plan, Plaintiff was entitled to elect accidental death and

dismemberment insurance coverage for qualified dependents as well as life insurance coverage for qualified dependents. G-12 and G-18.

Latay Gibson Stevenson, daughter of the Plaintiff, was born September 11, 1982, and under the terms of the Plan, Latay, for some period of time, qualified as a dependent child of the Plaintiff. Latay passed away as the result of an automobile accident on September 8, 2003. G-72. At the time of her death, she was 20 years old and married to Demeno Artez Stevenson. G-72 and G-52. At what point Latay might have ceased to qualify as a dependent of the Plaintiff is the central disputed issue in this case.

After Latay's death, Plaintiff filed a dependent life insurance claim for $10,000. This claim was denied by MetLife based upon their determination that Latay no longer qualified as a dependent of Plaintiff because she was married at the time of her death. G-56. After appealing this denial, MetLife reviewed the claim and denied it for the second time. G-39. While it is not reflected in the Administrative Record filed with the Court, both parties have admitted in their pleadings that Plaintiff also made a claim in 2007 for accidental death benefits under the Plan in the amount of $200,000. This claim was also denied by MetLife based upon their determination that Latay was not a qualified dependent under the Plan. Doc. 17, ¶ 21 and Doc. 18, ¶ 21.[1]

Under the terms of the Plan, dependents eligible for coverage under life insurance and accidental death and dismemberment coverage include a covered employee's:

> "...legal spouse or common-law spouse (as determined by state law);

---

[1] There are no documents in the administrative record that clearly and explicitly indicate what benefits Plaintiff was entitled to under the Plan. However, both parties agree that dependent life insurance and dependent accidental death and dismemberment insurance are the only potential benefits implicated in this case. For purposes of analyzing the legal merits of Plaintiff's claim, the Court will assume that Plaintiff did in fact hold life insurance and accidental death and dismemberment insurance on his daughter, Latay Gibson Stevenson, in the amounts of $10,000 and $200,000 respectively.

>...***unmarried*** children under age 19 who are principally supported by [employee];
>
>...***unmarried*** child of any age who is not capable of self-support due to a physical or mental disability that occurred before age 19 (or age 25 if a full-time student) and who is principally supported by [employee]. Proof of disability may be required; and
>
>...***unmarried*** child age 19 to age 25 if he or she is enrolled as a full-time student in an accredited school or recognized course of study or training and principally supported by [employee]. Proof of student status and support may be required. [remaining language omitted]." (emphasis added).  G-3.

Upon Latay Gibson Stevenson's marriage in 2001, the point at which she was clearly no longer a qualified dependent under the Plan, Plaintiff contends that MetLife was notified of her change in status yet continued to withhold insurance premiums for dependent life insurance and dependent accidental death and dismemberment insurance from Plaintiff's earnings even after Latay's death in 2003. MetLife does not appear to dispute that Plaintiff informed them of Latay's change in status. MetLife also does not dispute that it continued to withhold life insurance premiums after Latay's change in status. However, MetLife has submitted an affidavit from Brenda Barlek, Alcoa's Manager of Heather and Welfare and Customer Service, stating that Plaintiff paid only one accidental death and dismemberment insurance premium that covered all of Plaintiff's dependents. MetLife contends that, because Plaintiff's wife has always been covered as a dependent under the accidental death and dismemberment policy, no "extra" accidental death insurance premiums were ever deducted for Latay Gibson Stevenson.

## STANDARD OF REVIEW

The Court has already determined that the proper standard of review in this case is a *de novo* review (Doc. 41) conducted pursuant to *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115,

3

109 S.Ct. 948, 956-57, 103 L.Ed.2d 80 (1989).

## DISCUSSION

Plaintiff contends that, because MetLife continued to deduct life insurance and accidental death and dismemberment insurance premiums even after being notified that Latay was no longer a dependent, MetLife should be estopped from now denying that Latay was a qualified dependent under the plan and full benefits should be paid to Plaintiff. Assuming *arguendo* that these premiums were deducted after Plaintiff notified MetLife that Latay no longer qualified as a dependent under the Plan, Plaintiff cannot prevail under a theory of equitable estoppel.

The Eighth Circuit will only recognize a claim for equitable estoppel "where an employer (or plan administrator) has expressed a 'specific' intent to be bound by either an oral or written modification of the plan." *Slice v. Sons of Norway*, 34 F.3d 630, 634 (8th Cir. 1994). Furthermore, "[e]stoppel can only be employed when the terms of the plan are ambiguous and the communications constituted an interpretation of that ambiguity .... When the alleged misrepresentations flatly contradict the unambiguous language of the plan, an estoppel claim is not available." *Id.* (internal quotation marks omitted). *See also*, *Algren v. Pirelli Armstrong Tire Corp.*, 197 F.3d 915 (8th Cir.1999). In sum, equitable estoppel may not be used to vary or contradict the language of an ERISA plan or to enlarge the benefits available under the plan where plan language is unambiguous.

In this case, the language in the Plan regarding whether an individual qualifies as a dependent is clear and unambiguous as applied to the factual situation before the Court. The Plan provides, in sum, that (1) a child is no longer a dependent once they reach age 19, unless they are disabled or qualify as a full time student, and (2) a child who is married, no matter their age,

disability, or student status, is not a qualified dependent.

Latay Gibson Stevenson's Certificate of Death clearly indicates that she was married to Demeno Artez Stevenson at the time of her death. G-72. Furthermore, when Plaintiff filled out the MetLife life insurance claim form in January 2004, he listed on this form that Latay was married at the time of her death. G-52. Plaintiff claims that Latay was in fact separated from her husband and living with Plaintiff during the period leading up to her death. Assuming these facts to be true, Latay's separation from her husband or financial dependence on the Plaintiff would have no affect her on status as a dependent under the unambiguous Plan language. Latay was still legally married at her death. This fact alone precludes her from qualifying as a dependent.

While MetLife appears to have continued to treat Latay as a dependent for purposes of deducting life insurance premiums, the Plan clearly provides that a married child cannot qualify as a dependent. The Court finds the Plan language to be unambiguous, therefore, Plaintiff may not utilize the doctrine of equitable estoppel to collect life insurance or accidental death and dismemberment insurance benefits for the death of Latay Gibson Stevenson. However, Plaintiff is entitled to reimbursement for any life insurance premiums withheld by MetLife after MetLife received notification of Latay Gibson Stevenson's change in dependent status. In light of the evidence submitted by MetLife showing no separate premium for accidental death and dismemberment insurance being withheld for Latay Gibson Stevenson and Plaintiff's failure to point to any evidence in the record to the contrary, the Court finds no basis for reimbursement of accidental death and dismemberment insurance premiums.

## CONCLUSION

For the reasons stated above, the Court finds that MetLife's denial of life insurance benefits and accidental death and dismemberment insurance benefits to Plaintiff should be upheld. The Court also finds that Plaintiff is entitled to reimbursement from MetLife for all life insurance premiums charged to Plaintiff after MetLife was notified of Latay Gibson Stevenson's change in dependent status. A judgment of even date, consistent with this opinion, shall issue.

IT IS SO ORDERED, on this 31st day of August, 2011.

                                                  /s/ Harry F. Barnes
                                               Hon. Harry F. Barnes
                                               United States District Judge